```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ALABAMA
                        Southern Division
```

FILED
98 JUL 15 PM 2:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

JAMES RANDY BOTTOMLEE,  )
    Plaintiff(s);  )
  )
-vs.-  )    No. CV-96-P-771-S
  )
THE TOWN OF KIMBERLY,  )
ALABAMA, et al.,  )
    Defendant(s).  )

ENTERED
JUL 15 1998

### Opinion

Defendants' motion for summary judgment was considered by the court at its motion docket on August 29, 1997. For the reasons set forth below, defendants' motion is due to be granted.

### Statement of Facts[1]

This action arises out of plaintiff James Bottomlee's ("Bottomlee") arrest by Officer Robert Rayford ("Rayford") of the Kimberly Police Department at approximately 12:19 a.m. on March 23, 1994, outside the Scoreboard Lounge. Prior to Rayford's arrival, Bottomlee had been involved in an altercation with another bar patron and had been escorted out of the bar by a lounge employee, John Cannon. When Officer Rayford arrived at the Scoreboard Lounge, Bottomlee and another man were leaning against an automobile parked outside the bar. When Rayford asked them what the problem was, they shrugged. Rayford then entered the lounge, where he was told by lounge employees that Bottomlee had brandished a weapon and made threats against another

---

    1. This recitation of "facts" is based upon the presented materials viewed in the light most favorable to the Plaintiffs.



patron. When Rayford exited the lounge, he saw Bottomlee getting into his automobile. At that point, Rayford patted Bottomlee down and discovered a gun. With the assistance of Officer Allen Evans of the Warrior Police Department, Rayford arrested Bottomlee for public intoxication and for carrying a concealed weapon. Rayford placed Bottomlee in the police vehicle and transported him to the city jail.

Within an hour an a half of Bottomlee's arrest, police officers notified Bottomlee's wife that he had been arrested. The officers explained the procedures that Mrs. Bottomlee would need to follow to post bail for her husband. Bottomlee was not told that his wife had been notified.

Once he was placed in a jail cell, Bottomlee began to protest vocally, expressing the belief that the police were abusing him by arresting and jailing him. Rayford attempted to quieten Bottomlee, who was shouting loudly and disturbing the sleep of the other inmates. Bottomlee continued to "holler" as long as he was able to see Rayford. When he failed to get Rayford's attention by his continued yelling, Bottomlee took the plastic trap off of the sink in his cell, causing the cell to flood. The officers on duty removed Bottomlee from his cell and mopped up the water. When Bottomlee was placed back in his cell, the officers handcuffed his arm to the bars of the cell, so that Bottomlee could no longer reach the sink. Bottomlee continued his verbal protests, promising that no inmate would be able to sleep for the rest of the night. By this point, Bottomlee was trying to aggravate Rayford because Rayford had arrested and incarcerated him. Bottomlee called Rayford "son of a bitch" and "pecker head." Bottomlee banged his handcuffs on the cell bars and threatened to rip his arm off if he was not released.

At 3:30 a.m., following a discussion between Rayford and Evans concerning the use of mace, Rayford warned Bottomlee that he would be maced if he did not quieten down. When

2

Bottomlee continued shouting and banging against the cell bars, Rayford sprayed mace or another chemical spray in Bottomlee's eyes and onto his body. Rayford's course of action complied with the department's adopted procedures.

On March 22, 1996, Bottomlee filed this action against the Town of Kimberly ("Kimberly"), Kimberly mayor Sammie Maze ("Maze"), chief of police Leon Welch ("Welch"), and Rayford, alleging violations of Bottomlee's rights under the first, fourth, fifth, eighth and fourteenth amendments of the United States Constitution pursuant to 42 U.S.C. § 1983. Bottomlee also alleged state law claims for false imprisonment, malicious prosecution and abuse of process against Rayford and Kimberly, as well as a claim of assault and battery against Rayford. In June 1996, the court dismissed plaintiff's claims against Welch (on plaintiff's motion) and Maze (on defendant's motion). Accordingly, plaintiff's only remaining claims in this action are against Rayford and Kimberly.

## Analysis

### I. Claims Against Officer Rayford

"Public officials performing discretionary functions enjoy qualified immunity from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Herren v. Bowyer*, 850 F.2d 1543, 1545 (11th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A police officer's decision to make an arrest is a discretionary function. *See id.* at n.5. An officer does not violate clearly established constitutional law when he uses mace to control "unruly" prisoners. *See Williams v. Hoyt*, 556 F.2d 1336, 1339 (5th Cir. 1977).

In the instant case, Rayford arrested Bottomlee on the basis of public intoxication and

3

possession of a concealed weapon.[2] In the arrest report, Rayford stated that he "arrested [Bottomlee] in order to calm down a situation that could have gotten a lot worse." Under these circumstances, the court concludes that Rayford's decision to arrest Bottomlee was an act clearly within Rayford's discretion, such that Rayford is entitled to qualified immunity from claims based upon the arrest.

Rayford is also entitled to qualified immunity from claims based upon his decision to spray Bottomlee with mace. Bottomlee has not disputed that, between his 12:19 a.m. arrest and the spraying of mace at 3:30 a.m., he constantly "hollered" to complain about his arrest, flooded his cell, called Rayford "son of a bitch" and "pecker head," and threatened to keep all of the inmates awake for the rest of the night by his yelling. Not all sound that emerges from a person's mouth is protected under the first amendment. Based upon the facts presented, the court concludes that Rayford's use of mace to control this most "unruly prisoner" was — at least in terms of the applicability of qualified immunity — at least arguably constitutional. Accordingly, defendants' motion for summary judgment is due to be granted as to Bottomlee's claims against Rayford.

## II. Claims Against the Town of Kimberly

A municipality in not liable for any civil rights deprivations based on the theory of respondeat superior. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A municipality may "be sued directly if it is alleged to have caused a constitutional tort through a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988). "In short, a

---

2. Plaintiff has not disputed that he was somewhat intoxicated at the time of his arrest, nor has he denied possessing the .25 caliber weapon referenced in the arrest report.

4

municipality can be sued under [section] 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 113 S. Ct. 1160, 1162 (1993).

The general rule is that a municipality "may not be held accountable for a municipal policy on the basis of a single incident . . . ." *Williams v. City of Albany*, 936 F.2d 1256, 1261 (11th Cir. 1991). A single act by a municipal officer subjects the municipality to liability under section 1983 only where 1) the municipality officially sanctioned or ordered the act; 2) the act was performed by a municipal officer who possessed final policy-making authority as defined by state law; or 3) the act was taken pursuant to a policy adopted by the official or officials responsible for making policy in that area. *Manor Healthcare Corp. V. Lomelo*, 929 F.2d 633, 637 (11th Cir. 1991). "The fact that a particular official — even a policy making official — has discretion in the exercise of a particular function does not, without more, give rise to municipal liability on an exercise of that discretion." *Id.* at 637.

Here, plaintiff has pointed to no custom or policy adopted by Kimberly that resulted in his being arrested, incarcerated, and sprayed with mace. Although plaintiff has attached to his opposition brief copies of various recommended policies concerning the use of mace, it is apparently undisputed that the Kimberly Police Department had adopted *no policy* concerning the use of mace at the time of Bottomlee's incarceration.[3] Moreover, Bottomlee has never, either in his complaint or subsequently through deposition, identified any other instance in which an inmate was inappropriately maced. Under these circumstances, the court concludes that defendants'

---

3. The court is unpersuaded by plaintiff's argument that the Kimberly Police Department's "refusal" to adopt a policy concerning the proper use of mace was tantamount to a policy encouraging the improper use of the substance.

summary judgment motion is due to be granted as to Bottomlee's claims against Kimberly.

## Conclusion

This court has concluded that summary judgment on all claims made by plaintiff pursuant to 42 U.S.C. § 1983 is due to be granted in favor of defendants Officer Rayford and the Town of Kimberly. Having ruled on the merits of plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over Bottomlee's claims under Alabama law; those claims are due to be dismissed without prejudice to their being presented in an appropriate state court.

Dated: July 15, 1998

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. James W. Porter
    Mr. Herbie Brewer
    Ms. Victoria Franklin-Sisson
    Mr. Victor Kelley
    Mr. Leon Welch